UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA FREITAG, in her capacity as Court-appointed receiver for ANI DEVELOPMENT, LLC, AMERICAN NATIONAL INVESTMENTS, INC., and their subsidiaries and affiliates,<br><br>Plaintiff,<br>v.<br><br>HORACIO VALEIRAS, as trustee of THE VALEIRAS FAMILY TRUST dated July 20, 2007<br><br>Defendant. | Case No. 3:21-cv-1625-LAB-AHG<br><br>**ORDER GRANTING MOTION TO DISMISS OR STRIKE [Dkt. 9]** |
| HORACIO VALEIRAS, as trustee of THE VALEIRAS FAMILY TRUST, dated July 20, 2007<br><br>Counterclaimant,<br>v.<br><br>KRISTA FREITAG, in her capacity as Court-appointed receiver for ANI DEVELOPMENT, LLC, AMERICAN NATIONAL INVESTMENTS, INC., and their subsidiaries and affiliates,<br><br>Counter-Defendant. | |

-1-

Plaintiff/Counterclaim Defendant Krista Freitag (the "Receiver"), in her capacity as court-appointed receiver for ANI Development, LLC, American National Investments, Inc., and their subsidiaries and affiliates (the "Receivership Entities"), initiated a clawback action against Defendant/Counterclaimant Horacio Valerias ("Valeiras"), trustee of The Valeiras Family Trust (the "Trust"). (Dkt. 1). The complaint seeks to recover profits that the Trust allegedly received as a result of its financial involvement with Kim Funding and ANI Development. (*Id.*). The Trust responded with a counterclaim for declaratory relief seeking "a determination of the Trust's rights and/or a determination of the Receiver's rights and powers under the circumstances presented." (*See* Dkt. 8 ¶ 53).

The Receiver moved to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f) on the ground that the counterclaim mirrors the clawback claim, the Trust's factual denials, and its subsequent affirmative defenses. (Dkt. 9). Because resolving the Receiver's claims would require the Court to address the same issues as raised by the counterclaim, the motion is **GRANTED** and the counterclaim is **DISMISSED**.

## BACKGROUND

Gina Champion-Cain, along with her company ANI Development, raised $390 million in investor funds under the false pretense of funding liquor license applicants. Champion-Cain instead redirected the money to American National Investments, Inc. and other entities she controlled, using the funds to pay prior investors and support her own extravagant lifestyle. In other words, it was a "classic Ponzi scheme." (*See* Compl., Dkt. 1 ¶ 11). After the SEC filed this action against Champion-Cain and her businesses, the Court appointed Krista Freitag as the permanent receiver for the Receivership Entities in order to find and recover the misappropriated funds. (Dkt. 11).

As part of that process, Freitag filed several clawback actions against

investors that, although innocent of intentional wrongdoing, allegedly profited from Champion-Cain's scheme. (*See, e.g.,* Compl., Dkt. 1 ¶ 18). Valeiras's Trust is one such alleged beneficiary. In 2016, the Trust invested in Kim Funding, a company which Champion-Cain had deputized to raise funds and find investors for her scheme. (*Id.* ¶ 10). This investment yielded $486,041 in interest to the Trust, and the Receiver seeks to claw back that amount. (*See id.* ¶¶ 19-29).

The Trust responds that it was a net loser, though, in part because of Valeiras's other investments in Champion-Cain's scheme. Valeiras, as trustee for the Trust, was a limited partner in HAV Global Macro Fund, L.P. ("HAV"), which invested a total of $6 million in Kim Funding. The Trust allegedly held an 18% interest in these funds, and HAV ultimately suffered a "net loss" on this investment. (*See* Dkt. 8 ¶ 30; Dkt. 9 at 7 (conceding that HAV suffered a net loss from the scheme)). HAV recovered some of these losses through a settlement with Chicago Title Company, the escrow agent for the fictitious liquor license program. That settlement, which the Receiver consented to, provided that HAV was a net loser and so wouldn't be subject to the Receiver's clawback claims. (Dkt. 8 ¶ 46). The Trust contends that HAV's losses must offset any of the Trust's gains. (*Id.* ¶ 54). But the Receiver argues that HAV's losses can't be used to offset the Trust's gains because HAV, in securing the settlement, took the position that the Trust's gains and HAV's losses *couldn't* offset one another. (Dkt. 11).

The Trust filed an Answer with eleven affirmative defenses and a Counterclaim asking the Court to issue a series of declarations. (*See* Dkt. 8). Each proposed declaration pertains to alleged flaws in the Receiver's claims, and most are mirror images of the Answer's denials or affirmative defenses:

    1) The Counterclaim seeks declarations that the Trust is a "net loser," and thus a "victim" of the fraud, (Dkt. 8 at 18–19 ¶¶ 54(1), (4)), while

    the Answer denies that the Trust "received . . . profits" through its involvement with the Receivership Entities, (*see* Dkt. 1 ¶ 19; Dkt. 8 at 3, ¶ 19);

2) The Counterclaim seeks a declaration that the Trust's gains and losses through Kim Funding are outside the scope of the Receivership Entities, (Dkt. 8 at 18 ¶ 54(2)), and the Answer denies the accuracy of the Receiver's profit calculation, (*see* Dkt. 1 ¶ 20; Dkt. 1 Ex. B; Dkt. 8 at 3, ¶ 20);

3) The Counterclaim seeks a declaration that "the gains of Valeiras should be offset by the losses sustained by Valeiras," (Dkt. 8 at 18 ¶ 54(3)), and the Answer asserts an affirmative defense of offset, (*Id.* at 4);

4) The Counterclaim asks the Court to declare that "the Receiver must . . . take the burdens of [her] elections regarding [the Levin Settlement]," (*Id.* at 19 ¶ 54(5)), while the Answer asserts, as an affirmative defense, that "the Receiver must take the burdens along with the benefits of her actions," (*Id.* at 8); and

5) The Counterclaim seeks a declaration that the claims in the Receiver's Complaint aren't ripe, and therefore the Court lacks jurisdiction over them. (*Id.* ¶ 54(6)).

*Id.* 18-19.

The Receiver asks the Court to dismiss or strike this counterclaim on the ground that it would be duplicative of the Receiver's claim and the Trust's affirmative defenses to it. (Dkt. 9).

## APPLICABLE STANDARD

The Court has jurisdiction over claims for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. That Act gives district courts the "authority to declare the rights and legal relations of interested parties, but not

a duty to do so." *Stickrath v. Globalstar, Inc.*, No. C07-1941-TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008) (citing *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008)). In determining whether to decline jurisdiction, the Court "must balance concerns of judicial administration, comity, and fairness to the litigants." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994). A number of reasons may support declining jurisdiction, including the need to "avoid duplicative litigation." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005).

The Court may use its discretion to dismiss counterclaims that are duplicative or the "mirror image" of claims in the complaint or in the affirmative defenses. *Stickrath*, 2008 WL 2050990, at *3. A plaintiff moving to dismiss or strike a counterclaim on this basis must show "that there is a complete identity of factual and legal issues between the counterclaims and the affirmative defenses, and that the counterclaims serve no useful purpose." *Id*. A claim for declaratory relief can avoid such a dismissal where it has a broader scope than does the claim alleged in the original action. *Lakeland Tours, LLC v. Bauman Lakeland Tours*, No. 13CV2230- CAB-JMA, 2014 WL 12570971, at *3 (S.D. Cal., Aug. 19, 2014).

## ANALYSIS

The Trust seeks six declarations as to the propriety of a clawback claim against it and the calculation of damages on such a claim. But because each declaration the Trust seeks amounts only to a declaration that the Trust would prevail against the Receiver's claim, the Trust's counterclaim is duplicative of the Receiver's clawback claim, so the Court dismisses that counterclaim.

The first and fourth declarations that the Trust seeks are that it is a "victim of the Ponzi fraud" and therefore a "net loser" because it suffered a net loss through its involvement with the Receivership Entities. (Dkt. 8 at 18–19 ¶¶ 54(1), (4); *See* Dkt. 10 (stating "the Valeiras Trust lost money and is not a

net winner… [Valeiras Trust is] a victim of the fraud perpetrated by Gina Champion-Cain and Chicago Title."). This is merely the mirror image of the Receiver's claim, which relies on proving that the Trust profited from the scheme, and the Trust's Answer, which denies the relevant allegations. (*See* Compl., Dkt. 1 ¶ 19-20). In calling itself a "victim" and a "net loser," the Trust simply alleges that the Receiver can't prove this element of her claim. The Court will necessarily resolve the question of whether the Trust is a net winner or loser in resolving the Receiver's claim, so the claim for a declaration as to the Trust's "victim" status is redundant.

The Trust's second and third declarations both relate to the calculation of the Trust's net proceeds from their investment with Kim Funding, too. Those declarations—that the Trust's gains and losses are outside the scope of the Receivership or, if they are within scope, they are offset by HAV's losses—similarly amount to a denial of the Receiver's claim that the Trust profited from the scheme. And the third declaration seeks to establish the same offset theory that forms the Trust's fifth affirmative defense, that "the gains of [the Trust] should be offset by the losses sustained by Valeiras." (Dkt. 8 at 4). The calculation of net gains or losses is the same one necessary to establish whether Trust was a net winner as necessary to support the Receiver's claim, so litigating these proposed declarations wouldn't answer any questions that won't be addressed in litigating Freitag's claim.

The fifth declaration the Trust seeks is that "by virtue of the Receiver's election of obtaining benefits under the Settlement Agreement by the Levin plaintiffs with Chicago Title, the Receiver must also take the burdens of its elections regarding that settlement." (Dkt. 8 ¶ 54(5)). This is duplicative of the Trust's eighth affirmative defense, that "the Receiver must take the burdens along with the benefits of her actions." (*Id.* at 5).

The Trust's sixth and final declaration asks the court to determine that

"the damages claimed or sought by the Receiver … are currently the subject of pending claims by Peterson and his Trust and/or Kim Funding against Chicago Title, and thus the issues are therefore not ripe for adjudication until Peterson resolves his claims against Chicago Title and the Receiver resolves her claims against Peterson and his Trust and/or Kim Funding." (Dkt. 8 ¶ 54(6)). Whether a claim isn't ripe, and whether the Court lacks jurisdiction over the claim as a result, is an issue implicated by the claim itself. *See DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006) (ripeness is jurisdictional issue). While the Trust's answer doesn't raise ripeness as an affirmative defense, the issue is necessarily implicated by the claim it relates to. If Defendants wish to raise ripeness as an affirmative defense, they may do so at any time by amending their answer. *See id.* (ripeness "may be raised at any time, even for the first time on appeal").

## CONCLUSION

The Trust doesn't identify any issues in their counterclaim that wouldn't be resolved through litigation of the Receiver's clawback claim. (Dkt. 11 at 3 n.2). And because the Court finds (and Freitag concedes) that the Complaint and Counterclaim raise identical issues, the Trust's concern that dismissing its Counterclaim will limit discovery is unfounded: any discovery that would be available in connection with the Counterclaim will be available in connection with the Receiver's claim, too. The Motion is **GRANTED**. The Trust's counterclaim is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: June 22, 2022

*Larry A. Burns*
Hon. Larry Alan Burns
United States District Judge